UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
JOSE GARCIA,

                                 Plaintiff,

            - against -

CITY OF MOUNT VERNON, CITY OF MOUNT
VERNON POLICE DEPARTMENT,
and INDIVIDUALS OF THE CITY OF MOUNT
VERNON POLICE DEPARTMENT

                              Defendants.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**08-CIV-1270**

**(SCR)**

**MEMORANDUM OF LAW IN OPPOSITION TO
MOTION FOR DISMISSAL BASED ON THE PLEADINGS
OR ALTERNATELY SUMMARY JUDGMENT**

**PARISI &PATTI, LLP**
**By:** Cheryl K. Beece
200 Mamaroneck Ave. Suite 602
White Plains, New York 10601
(914) 287-0201
(914) 287-7384 (Fax)

0

# TABLE OF CONTENTS

**TABLE OF AUTHORITIES**…………………………………..…………………**2-3**

**PRELIMINARY STATEMENT**……………………………….………………**4**

**POINT I**
**THE LEGAL STANDARDS**
      **A.  The Instant Motion**…………………………………..………...**6**
      **B.  Motion pursuant to Fed. R. 12(c)**…………………….……………**7**
      **C.  Motion Pursuant to Fed. R. 56**……………………….…………**8**
      **D.  Qualified Immunity**…………………………………………...……**10**

**POINT II**
**DEFENDANTS DID NOT HAVE PROBABLE CAUSE TO ARREST PLAINTIFF**

      **A.  Under the totality of the circumstances, Plaintiff's flight was reasonable**
         **and not a sufficient basis for probable cause**……………………………..**11**
      **B.  The show-up identification by the alleged victim was defective**…………**12**
      **C.  Under the totality of the circumstances, the officers did not have**
         **reasonable probable cause and violated Plaintiff's rights**……………..**14**

**POINT III**
**THE OFFICERS DID NOT HAVE PROBABLE CAUSE AND THEREBY**
**ARE NOT ELIGIBLE FOR QUALIFIED IMMUNITY UNDER STATE OR**
**FEDERAL LAW**………………………………………………………………..**15**

**POINT IV**
**THE OFFICERS USED EXCESSIVE FORCE UNDER THE CIRCUMSTANCES**
**WHEN ARRESTING PLAINTIFF**………………………………………….....**17**

**POINT V**
**THE LACK OF PROBABLE CAUSE COMBINED WITH**
**ACTUAL MALICE ON THE PART OF THE OFFICERS**
**SUPPORTS THE CHARGE OF MALICIOUS PROSECUTION**…………...…..**19**

**POINT VI**
**PLAINTIFF WAS DEPRIVED OF HIS DUE PROCESS RIGHTS**………..……**20**

**POINT VII**
**THERE ARE QUESTIONS OF MATERIAL FACT**
**AS TO PLAINTIFF'S STATE LAW CLAIMS**……………………………**21**

**CONCLUSION**……..……..…………………………………………………**25**

1

# TABLE OF AUTHORITIES

*Amaral v. Metro-North Commuter R. Co.,* 7 Misc.3d 1006(A), 801 N.Y.S.2d 229, 3 (Table) N.Y.Sup.,2005)…...………………………………………………7, 11

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)………………………………9

*Arias v. City of New York*, 22 A.D.3d 436, 802 N.Y.S.2d 209 (2d Dep't 2005)………...24

*Arteaga v. State of New York*, 72 N.Y.2d 212, 532 N.Y.S.2d 57 (1988)…….…..……...24

*Bell Atlantic Corporation v. Twombly*, 127 S.Ct. 1955 167 L.Ed.2d 929 (2007)………..8

*Cowan v. Breen*, 352 F.3d 756, 761 (2d Cir.2003)…………………………………10, 17

*Curry*, 316 F.3d 324 (C.A.2d (N.Y.) 2003)…………...…………………………...10, 15

*De France v. Richard W. Oestrike*, 8 A.D.2d 735 (2nd Dept.1959)……………………7

*Dunlop v. City of New York*, 2008 WL 1970002 (S.D.N.Y., 2008)……..………………8

*Franklyn National Bank of Long Island v. De Giacomo,* 20 A.D.2d 797 (2nd Dept.1964)……………………………………………………7

*Gomez v. City of New York*, 2007 WL 5210469 (S.D.N.Y., 2007)……………..9, 10, 11, …………………………………………………………14,15,17,21,23, 25

*Graham v. Connor*, 490 U.S. 386, 109 S.Ct. 1865 (1989)………………………10, 20, 21

*Hamlett v. Town of Greenburgh,* No. 05-CV-3215, 2007 WL 119291(S.D.N.Y., 2007).15

*Hayes v. City of Amsterdam*, 2 A.D.3d 1139, 770 N.Y.S.2d 138 (3d Dep't 2003)………24

*Jaegly v. Couch,* 439 F.3d 149 (2d Cir.2006)…………………………………………21

*Johnson v. Suffolk County Police Department*, 245 A.D.2d 340, 665 N.Y.S.2d 440 (2d Dep't 1997) ……………………………………………………………………23

*Jones v. Parmley*, 465 F.3d 46 (2d Cir.2006).…………………………..….……………..24

*Jones v. State*, 33 N.Y.2d 275, 352 N.Y.S.2d 169 (1973)……….…..…………………24

*Kerman v. City of New York,* 261 F.3d 229, 240 (2d Cir.2001). ……………………10, 15

*Lowth v. Town of Cheektowaga*, 82 F .3d 563 (2d Cir.1996)………………………15, 22

2

*Maxwell v. City of New York*, 380 F.3d 106, 108-09 (2d Cir.2004)………….;;;;;.………17

*National Ass'n of Pharmaceutical Mfrs., Inc. v. Ayerst Laboratories*,
    850 F.2d 904, 909 n. 2 (2d Cir. 1988). …………………………………………..8

*O'Neill v. Town of Babylon*, 986 F.2d 646 (2d Cir.1993)……………………………..19

*People v. Cooper,* 162 Misc.2d 192, 616 N.Y.S.2d 442 (N.Y.Just.Ct.,1994)…………...13

*People v. Lebron*,  11 Misc.3d 1065(A), 816 N.Y.S.2d 699 (Table)(N.Y.Sup., 2006)13,14

*People v. Riley*, 70 N.Y.2d 523……………………………………………………..13

*Pierre-Antione v. City of New York*, No. 04 Civ. 6987,
    2006 WL 1292076 (S.D.N.Y. 2006)……………………………………………17

*Posr v. Court Officer Shield No. 207*, 180 F.3d 409 (2d Cir.1999)…….…..…………21

*Post v. Elser*, No. 92-CV-1146, 1996 WL 406843 (N.D.N.Y., 1996)…..……………17

*Robison v. Via*, 821 F.2d 913 (2d Cir.1987)…………..……………….………………..17

*Romano v. Howarth,* 998 F.2d 101 (2d Cir.1993)……………………………..………17

*Rotuba Extruders v. Ceppos*, 46 N.Y.2d 223 (1978)……………………………………11

*Saucier v. Katz*, 533 U.S. 194, 121 S.Ct. 2151 (U.S., 2001)……………………………10

*Sillman v. Twentieth Century Fox Film Corp.,* 3 N.Y.2d 395 (1957). …………………11

*Sulkowska v. City of New York*, 129 F.Supp.2d 274, 294 (S.D.N.Y.2001)……….……23

*Swift v. Mauro*, No. 5:04-CV-0899, 2008 WL 207793(N.D.N.Y., 2008)…………...10, 17

*Thomas v. Rouch*, 165 F.3d 137 (2d Cir.1998)………………………….………….10, 16

*United States v. Muhammad*, 463 F .3d 115 (2d Cir.2006)………….……….…………11

*Vann v. City of New York,* 72 F .3d 1040 (2d Cir.1995)………………….…………….9

*Weyant v. Okst*, 101 F.3d 845 (2d Cir., 1996)…………….…..…….…..……………15

*Wu v. City of New York*, 934 F.Supp. 581 (S.D.N.Y., 1996)……………………………19

3

## PRELIMINARY STATEMENT

The case herein is not a simple case, as alleged by Defendants, of mistaken identity, reasonable probable cause, justified force, and proper identification. Rather than the narrow focus presented by Defendant, Plaintiff presents a broader view of the facts and circumstances herein.

Defendants' arguments rely in large part on the fact that Plaintiff began to run when the officers left their car and ran toward him, and on the probable cause presumed therefrom. Defendants leave out a critical detail, both in their questioning of Plaintiff at the 50-H hearing and in their memorandum of law, which impacts their every argument. As noted in ¶ 6 of the verified complaint, the unmarked car in which the plainclothes undercover officers were riding did not just pull up to Plaintiff as portrayed in Defendants' Memorandum of Law (pp. 1, 8). Said unmarked black Lincoln town car slowly followed and then pulled by Plaintiff as he walked away from his bus stop toward his home, in a slow and deliberate manner that caused Plaintiff to have serious concerns for his safety and to worry as to whether the individuals in the car intended him harm. The car drove away, out of sight. Then the same unmarked car returned, again traveling slowly, until it stopped close to Plaintiff and two individuals in street clothes jumped out and began running towards Plaintiff. Plaintiff ran in fear for his safety, as would any other reasonable person who witnessed two drive-bys of a car at night, followed by sudden aggressive behavior on the part the occupants of that car.

Any experienced, trained, reasonable undercover police officer should have identified that there was more than one explanation for Plaintiff to flee under these circumstances, and that in fact, the behavior of the officers and their car could well

4

threaten someone unaware of their identity as plainclothes police.

Probable cause does not occur in a vacuum, it occurs within the full complement of circumstances existing at the time. Given that there was a reasonable alternate and apparent reason for Plaintiff to flee, the officers had a duty to accommodate that data into their analysis of probable cause, particularly since they had the time of the slow drive-bys to consider their effect on Plaintiff. This duty to consider alternate explanations for Plaintiff's actions in response to their own behavior extended to the apprehension of Plaintiff. There was no need or justification or excuse under the circumstances to hit Plaintiff in the head as part of the process of apprehending Plaintiff, since the two officers had already both tackled Plaintiff and thrown him to the ground underneath them. (Defendants' Memorandum of Law, p. 1).

The show-up identification was flawed, as should have been recognized by any trained, experienced, reasonable police officer. The alleged victim remained in a patrol car across the street from Plaintiff, where he may have been able to identify Plaintiff's clothes and skin color under the night lighting, but could not reasonably identify Plaintiff's face. Plaintiff was standing, handcuffed, in the custody of the police, an unduly suggestive scenario to present to the alleged victim, particularly where said victim's primary criteria for identification was apparently the type of jacket worn by Plaintiff that night. Upon information and belief, the police officers at the scene who detained Plaintiff did not inquire of the alleged victim or of the other officers as to the basis for the alleged victim's identification of Plaintiff.

Thus the entire foundation for the probable cause alleged by Defendants is seriously flawed, presenting questions of fact as to whether a reasonable person would

5

have fled under the circumstances and whether a reasonable officer would question an alleged victim or his fellow officers as to the basis of a show-up identification, and/or whether a reasonable police officer would recognize the show-up identification herein as defective. From the answers to those questions of fact then extends further questions of fact, as to whether hitting a subdued Plaintiff on the head was excessive force and/or was done with malice on the part of the officers.

The allegations herein are sufficient to support the causes of action, therefore the causes of action herein should not be dismissed. There are myriad questions of material fact herein which also preclude summary judgment for the Defendants as a matter of law. The motion to dismiss, and in the alternative for summary judgment, should be denied.

## POINT I
## THE LEGAL STANDARDS

### A. The Instant Motion

Plaintiff emphatically objects to the use of his 50-H hearing testimony as part of these pleadings. Use of testimony from a deposition for which Plaintiff was legally required to attend, and where Plaintiff's counsel was precluded from any cross-examination, is neither equitable nor appropriate. The example above, where Defendants either intentionally or inadvertently neglected to explore the allegations of ¶ 6 of the verified complaint, upon which the entire reasonableness of Plaintiff's actions could hinge, highlights the risk of allowing such one-dimensional testimony.

Additionally, allowing Defendants to use what is essentially discovery information, available exclusively to Defendants, where no such discovery was allowed to Plaintiff, poses an inherent and inequitable disadvantage to Plaintiff. For example,

Defendants can and most likely have interviewed the undercover officers and reviewed their service, training, and disciplinary records, opportunities not yet afforded to Plaintiff. Plaintiff may well be able to demonstrate a pattern of malice on the part of the officers and/or their employers, or deficiencies in their training or supervision which could bring into question their ability to identify reasonable probable cause under the circumstances.

"[T]he rule applies that summary judgment should not be granted if the facts upon which the motion is predicated are exclusively within the knowledge of the moving party or clearly not within the knowledge of the opponent." *Franklyn National Bank of Long Island v. De Giacomo*, 20 A.D.2d 797 (2nd Dept.1964), citing *De France v. Richard W. Oestrike,* 8 A.D.2d 735 (2nd Dept.1959). This argument for summary judgment weighs more heavily where it appears that the facts necessary to oppose the motion exist but are unavailable to the non-moving party, particularly where the "facts necessary to oppose the motion are within the exclusive knowledge of the moving party.." *Amaral v. Metro-North Commuter R. Co.,* 7 Misc.3d 1006(A), 801 N.Y.S.2d 229, 3 (N.Y.Sup., 2005),

The one-dimensional 50-H deposition of the Plaintiff has no place in the pleadings at this stage of this proceeding.

## B. Motion pursuant to Fed. R. 12(c)

Federal Rules of Civil Procedure Rule 12 (c) provides that: "After the pleadings are closed--but early enough not to delay trial--a party may move for judgment on the pleadings." As noted by Defendants, the "standard is the same that is applicable to a motion to dismiss for a failure to state a claim pursuant to 12(b)(6)." (Defendants' Memorandum of Law, p. 3, citing *National Ass'n of Pharmaceutical Mfrs., Inc. v. Ayerst*

7

*Laboratories*, 850 F.2d 904, 909 n. 2 (2d Cir. 1988).  The standard of review for such a motion requires that "in order to withstand such a motion, the '[f]actual allegations' contained in the complaint 'must be enough to raise a right to relief above the speculative level.'" *Dunlop v. City of New York*, 2008 WL 1970002, 4, (S.D.N.Y., 2008), quoting *Bell Atlantic Corporation v. Twombly*, 127 S.Ct. 1955, 1965, 167 L.Ed.2d 929 (2007). "[T]he plaintiff must allege 'enough facts to state a claim to relief that is plausible on its face.'" Id.

As more fully detailed below, Plaintiff alleges sufficient facts in his complaint which state claims to relief that are plausible on their face and which rise above the level of mere speculation.

### C.    Motion Pursuant to Fed. R. 56

Plaintiff asserts that Defendants' request in the alternative, to convert the motion to one for summary judgment pursuant to Fed.R.Civ.P. § 56(c) should be summarily denied, on the basis that there exist substantial questions of material fact to be decided by a jury and that said facts permeate every cause of action herein.  For example:

1. Would a reasonable person, having seen an unmarked black Lincoln town car slowly cruise by, leave, then return and stop beside him, wait to see if the men in street clothes suddenly and rapidly running toward him intended him no harm, or would a reasonable person flee?

2. Would reasonable plainclothes officers see the flight of Plaintiff as reasonable or as probable cause, within the totality of the circumstances?

3. Did the police officers, as they slowly passed by Plaintiff in their unmarked car,

8

see that Plaintiff was wearing headphones, and adjust their identification as police

officers accordingly?

    4. Did the police officers show their badges?

    5.  If a reasonable person, wearing expensive sneakers and carrying a visible ipod

was shown some form of a badge by individuals jumping from a car to run toward him,

would his reasonable response be to run or to wait to see if the men in street clothes were

muggers or legitimate plainclothes police officers?

    6.  Would a reasonable police officer inquire of officers in contact with an alleged

victim as to whether said officers had questioned the basis of the alleged victim's show-

up identification, before proceeding to detain and arrest the identified individual?

    7. Under the totality of these circumstances, would a reasonable police officer take

five minutes to make a phone call to verify Plaintiff's alibi, and would such a call save

both Plaintiff and the officers the unnecessary and intrusive processing, detention, and

legal procedures which ensued herein?

    "In moving for summary judgment against a party who will bear the ultimate

burden of proof at trial, the movant's burden will be satisfied if he can point to an absence

of evidence to support an essential element of the nonmoving party's claim. . . .  Where

the moving party meets that burden, the opposing party must 'set out specific facts

showing that there is a genuine issue for trial.' Fed.R.Civ.P. 56(e)(2)."  *Gomez v. City of*

*New York*, 2007 WL 5210469, 3 (S.D.N.Y., 2007).  "In assessing whether the nonmoving

party has presented evidence sufficient to raise a genuine issue of material fact, the court

resolves all ambiguities and draws all reasonable inferences in favor of the nonmoving

party. See *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *Vann v. City of*

9

*New York,* 72 F .3d 1040, 1048-49 (2d Cir.1995)." Id. at 2.

There is no absence of evidence, when all claims are taken in the light most favorable to Plaintiff.  The record to date is replete with questions of material fact.  Any motion for summary judgment should be denied.

### D.    Qualified Immunity

"Regarding the application of qualified immunity to excessive force claims, the Supreme Court has held that, notwithstanding the reasonableness assessment already inherent in the *Graham* test, '[t]he inquiries for qualified immunity and excessive force remain distinct.' *Saucier,* 533 U.S. at 204. Thus, the district court must first evaluate the constitutional claim on the merits, and if excessive force is found, then determine 'whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted.' *Cowan v. Breen,* 352 F.3d 756, 761 (2d Cir.2003) (quoting *Saucie*r, 533 U.S. at 202). While qualified immunity adds a further dimension to the deference afforded to police officers, the inquiry remains fact-specific. See *Swift v. Mauro,* No. 5:04-CV-0899, 2008 WL 207793, at 6 (N.D.N.Y. Jan. 24, 2008). Accordingly, 'summary judgment on qualified immunity grounds is not appropriate when there are facts in dispute that are material to a determination of reasonableness.' *Kerman v. City of New York,* 261 F.3d 229, 240 (2d Cir.2001) (quoting *Thomas v. Rouch*, 165 F.3d 137, 143 (2d Cir.1998)); see also *Curry,* 316 F.3d at 334 (factual disputes "as to the degree of force actually employed and its reasonableness" preclude dismissal on qualified immunity grounds)." *Gomez v. City of New York*, 2007 WL 5210469, 10 (S.D.N.Y., 2007).

"[T]he Court's function when determining a motion for summary judgment is

10

issue finding and not issue determination. *Sillman v. Twentieth Century Fox Film Corp.,*

3 N.Y.2d 395 (1957). Lastly, because summary judgment is such a drastic remedy, it

should never be granted when there is any doubt as to the existence of a triable issue of

fact. *Rotuba Extruders v. Ceppos*, 46 N.Y.2d 223 (1978). When the existence of an issue

of fact is even debatable, summary judgment should be denied. *Stone v. Goodson*, 8

N.Y.2d 167 (1960)." *Amaral v. Metro-North Commuter R. Co.,* 7 Misc.3d 1006(A), 801

N.Y.S.2d 229, 3 (Table) (N.Y.Sup., 2005).

At this juncture, with disputes and questions as to material facts and as to what a

reasonable police officer would do under the circumstances, the demand for qualified

immunity is inappropriate and premature.


## POINT II
## DEFENDANTS DID NOT HAVE PROBABLE CAUSE TO ARREST PLAINTIFF

### A.  Under the totality of the circumstances, Plaintiff's flight was reasonable and not a sufficient basis for probable cause

"In determining whether the officer had reasonable suspicion at the time of the stop, a

court must look to the 'totality of the circumstances' upon which the stop was based.

*Gomez v. City of New York*, 2007 WL 5210469, 3 (S.D.N.Y., 2007), citing *United States*

*v. Muhammad*, 463 F .3d 115, 121 (2d Cir.2006).  As outlined above, the Plaintiff acted

as a reasonable person would under the circumstances, and his flight alone, considered in

a vacuum, does not constitute probable cause.  A defective show-up identification does

not combine with reasonable flight to provide arguable probable cause. Even if the

officers possessed arguable probable cause, that does not excuse their failure to

investigate Plaintiff's alibi by making a simple five minute phone call.  That failure of the

11

officers and their employers in their duty to Plaintiff directly caused the continued

detention of Plaintiff and thereby constituted an unreasonable seizure.

**B.  The show-up identification by the alleged victim was defective**

Plaintiff was handcuffed, in custody, and across the street from the police car when

the alleged victim made his identification through the open window of the police car from

the back seat of the vehicle.  Plaintiff can not say as to whether the officers inside the car

conveyed to the officers outside the car that the alleged victim had positively identified

Plaintiff, or whether the officers outside the car heard the identification or whether any of

the officers questioned the alleged victim as to whether the basis of his identification was

the clothing and/or the skin color of Plaintiff and/or without any other criterion.  Plaintiff

has no knowledge as to what or if the officers inside the car communicated any

information or instructions to the alleged victim before he pointed out Plaintiff from the

back seat of the police car.  Although Defendants claim that the time between the

apprehension of Plaintiff and the show-up was "held at almost the same time the officers

had chased and secured the Plaintiff" (see Defendants' Memorandum of Law, p. 9), there

is no claim as to the period of time between the alleged mugging and the subsequent

show-up identification.

"Showup identifications are disfavored, since they are suggestive by their very

nature ... Nevertheless, prompt showup identifications which are conducted in close

geographic and temporal proximity to the crime are not presumptively infirm,' and in fact

have generally been allowed ... This is not to say that showup identifications are routinely

admissible. Indeed, while in *Duuvon* this Court upheld the admissibility of identification

testimony resulting from a showup, we emphasized there that the proof must be

12

scrutinized very carefully for [evidence of] unacceptable suggestiveness and unreliability'... Where there is no effort to make the least provision for a reliable identification and the combined result of the procedures employed' establish that the showup was unduly suggestive, the identification must be suppressed ...

"While the defendant bears the ultimate burden of proving that a showup procedure is unduly suggestive and subject to suppression, the burden is on the People first to produce evidence validating the admission of such evidence. Initially, the People must demonstrate that the showup was reasonable under the circumstances. The People also have the burden of producing some evidence relating to the showup itself, in order to demonstrate that the procedure was not unduly suggestive ... the People have the initial burden of going forward to establish the reasonableness of the police conduct and the lack of any undue suggestiveness in a pretrial identification procedure; see also *People v. Riley*, 70 N.Y.2d 523, 531." *People v. Lebron*, 11 Misc.3d 1065(A), 816 N.Y.S.2d 699 (Table) (N.Y.Sup., 2006)

A description of the clothing of the accused in insufficient to "support a reasonable belief that Defendant committed any offense." *People v. Cooper,* 162 Misc.2d 192, 616 N.Y.S.2d 442 (N.Y.Just.Ct.,1994). Where the flight of Plaintiff is easily and reasonably explained by the stalking behavior preceding the exit of the plainclothes officers from their black Lincoln town car, whether there was sufficient reason to arrest Plaintiff becomes a question of fact.

Even if the time were in close temporal proximity, "[t]he Court also has no evidence whatsoever tending to show a lack of suggestiveness. The Court has no clue as to what might have been said to the alleged eyewitness before [the officers] drove him to

13

the scene where [an officer] was holding [the accused]. The People have not met their

burden of going forward concerning the show up." *People v. Lebron*,  11 Misc.3d

1065(A), 6, 816 N.Y.S.2d 699 (Table) (N.Y.Sup., 2006).

Given the totality of the circumstances, there remain questions of material fact as

to probable cause and as to how a reasonable police officer would act under the

circumstances.  The motion to dismiss and the alternative motion for summary judgment

should be denied.

### C.   Under the totality of the circumstances, the officers did not have reasonable probable cause and violated Plaintiff's rights

Plaintiff was clearly wearing headphones, and could not be expected to hear or

understand anything said by the plainclothes officers as they exited the car or chased him.

Well-trained, reasonable and observant officers would surely have noticed that Plaintiff

was wearing headphones on their first slow and considered drive-by of Plaintiff.  The lack

of  knowledge that the individuals pursuing him were police officers, combined with the

suspicious behavior of the car, gave Plaintiff reason to fear for his safety and justified his

response in running away to try to remove himself from danger, as would any other

reasonable person.  The officers certainly should have appreciated that their own course

of behavior could be perceived as threatening by a reasonable individual, should have

noted the headphones worn by the Plaintiff, and should have taken action appropriate to

the situation to identify themselves and to modify their aggressiveness in detaining

Plaintiff.

"For this inquiry, the relevant facts include what efforts were made by the

defendants to identify themselves and what outward manifestations of disbelief were

14

displayed by the plaintiff. The plaintiff's subjective belief about whether the defendants were in fact police officers is not relevant." *Gomez v. City of New York*, 2007 WL 5210469, 6, n.1 (S.D.N.Y., 2007).

"Because the officers here were in plain clothes and it is disputed whether they announced themselves or displayed their shields as they approached, and because the plaintiff exhibited clear disbelief that they were police, a jury could find that they lacked probable cause to arrest [plaintiff]. See *Sutton v. Duguid*, No. 05-CV-1215, 2007 WL 1456222, at 8 (E.D.N.Y. May 16, 7007) (denying summary judgment because jury could find that defendants did not put plaintiff on reasonable notice that they were police officers); *Hamlett v. Town of Greenburgh,* No. 05-CV-3215, 2007 WL 119291, at 5 (S.D.N.Y. Jan. 17, 2007) (denying summary judgment on false arrest for disorderly conduct claim where there was an issue of material fact as to whether officer acted reasonably to identify himself). Probable cause may only 'be determin[ed] as a matter of law if there is no dispute as to the pertinent events and the knowledge of the officers.' *Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir.1996). Accordingly, it would be inappropriate to dismiss the plaintiff's false arrest claim at this stage." Id. at 6.

As Plaintiff's claims are analogous to those in *Gomez*, it is similarly inappropriate to dismiss Plaintiff's false arrest claim as demanded by Defendants herein.

## POINT III
### THE OFFICERS DID NOT HAVE PROBABLE CAUSE, AND THEREBY ARE NOT ELIGIBLE FOR QUALIFIED IMMUNITY UNDER STATE OR FEDERAL LAW

The plainclothes officers herein were clearly aware of the set of circumstances immediately preceding their run to apprehend Plaintiff, and should have been aware that

15

those circumstances – driving by Plaintiff slowly, not once but twice, late in the evening in a black Lincoln town car – would make any reasonable person apprehensive about their intentions. These circumstances should have factored into the officers' apprehension and treatment of Plaintiff. "Courts reviewing an officer's assertions of probable cause 'must consider those facts available to the officer at the time of arrest and immediately before it.'" *Gomez v. City of New York*, 2007 WL 5210469, (S.D.N.Y., 2007), quoting *Lowth v. Town of Cheektowaga*, 82 F .3d 563, 569 (2d Cir.1996). Where there are general issues of material fact as herein, a finding of even arguable probable cause is precluded. Id. at 10.

"[S]ummary judgment on qualified immunity grounds is not appropriate when there are facts in dispute that are material to a determination of reasonableness." *Kerman v. City of New York*, 261 F.3d 229, 240 (2d Cir.2001) (quoting *Thomas v. Rouch*, 165 F.3d 137, 143 (2d Cir.1998)); see also *Curry*, 316 F.3d at 334 (factual disputes 'as to the degree of force actually employed and its reasonableness' preclude dismissal on qualified immunity grounds). . . .

"Here, the degree of force employed by the defendants in bringing the plaintiff to the ground and the plaintiff's actions purportedly justifying that degree of force are in dispute. Any assessment of whether the officers made a reasonable mistake 'as to what the law require[d]' in the situation they confronted will turn on the jury's determination of what that situation was. *Saucier*, 533 U .S. at 206; *Cowan*, 352 F.3d at 764 (noting that outstanding factual disputes should be submitted to the jury before court decides issue of qualified immunity). The same lack of clarity exists with respect to the degree of force employed by [the officer]in applying the handcuffs. Thus, dismissal on qualified

16

immunity grounds would be premature. See *Swift*,2008 WL 207793, at 7 (denying summary judgment on qualified immunity grounds where plaintiff alleges officers struck him before he had opportunity to resist arrest and plaintiff's subsequent efforts were for the purpose of defending himself); *Post v. Elser*, No. 92-CV-1146, 1996 WL 406843, at 8 (N.D.N.Y. July 19, 1996) (denying summary judgment on qualified immunity grounds where plaintiff claims officers 'took him to the ground face down' and handcuffed him even though plaintiff did not resist arrest); but cf. *Massaro v. Town of Trumbull,* 525 F.Supp.2d 302, 308-09 (D.Conn.2007) (granting qualified immunity where plaintiff was pushed to the ground and handcuffed because he delayed in complying with officers' orders to open the door)." *Gomez v. City of New York*, 2007 WL 5210469, 10 (S.D.N.Y., 2007).

The reasonableness of the actions of the officers and of the Plaintiff are clearly in dispute, the necessity of the degree of force used by the officers is in dispute, and whether the officers made reasonable mistakes as to what the law required is in dispute. As in Gomez, dismissal on qualified immunity grounds is premature.

### POINT IV
### THE OFFICERS USED EXCESSIVE FORCE UNDER THE CIRCUMSTANCES WHEN ARRESTING PLAINTIFF

Where Plaintiff could reasonably have been running in fear of unknown assailants, where the ipod headphones could foreseeably have prevented Plaintiff from hearing any alleged identification by the plainclothes individuals as police officers, the tackling of the teenage Plaintiff by two full grown men, injuring his wrist, and the subsequent blow to the head while being held on the ground by both officers, was an excessive use of force.

17

"As a threshold matter, in order to sustain a claim for excessive force, the plaintiff must generally establish that the force applied was more than de minimis. See *Romano v. Howarth,* 998 F.2d 101, 105 (2d Cir.1993) ('[A] de minimis use of force will rarely suffice to state a constitutional claim.'). However, to survive summary judgment, the plaintiff need not show that the injury was severe or permanent. See *Maxwell v. City of New York*, 380 F.3d 106, 108-09 (2d Cir.2004) (reversing district court's dismissal of excessive force claim where plaintiff alleged shoulder pain and a scrape to her forehead); *Robison v. Via*, 821 F.2d 913, 924-25 (2d Cir.1987) (finding that plaintiff who suffered only bruises lasting 'a couple weeks' was entitled to submit excessive force claim to jury); *Pierre-Antione v. City of New York*, No. 04 Civ. 6987, 2006 WL 1292076, at 3 (S.D.N.Y. May 9, 2006) (declining to dismiss excessive force claim though "medical evidence [made] it less likely that [plaintiff could] prevail at trial because it does not reveal any severe injury");" *Gomez v. City of New York*, 2007 WL 5210469 at 7.

"The law does not require that a plaintiff be bleeding or in need of immediate medical attention to maintain a cause of action for excessive force. . . . summary judgment should not be granted on this basis." Id.  Where officers claimed that a plaintiff's excessive force claims were invalid on the grounds that the injuries were de minimis and the force used was reasonable, an excessive force claim was nonetheless maintained.  Id

Plaintiff has no records of medical treatment for the injuries to his hand and head for the simple reason that treatment was administered by Defendants and their agents. Plaintiff was detained in jail from Friday evening until late Monday afternoon, where records of any medical treatment he received would be maintained by Defendants, and/or

18

available to Defendants in preparing their motion, and unavailable to Plaintiff for use in his opposition papers.  Upon his release three days later, Plaintiff did not receive medical treatment for the simple reason that he did not have medical insurance, and he had already just imposed on his grandmother to pay $5,000.00 in legal fees pursuant to obtaining his release and in anticipation of further appearances in resolving the matter of his arrest.

Plaintiff's injuries are sufficient, under *Gomez*, to survive the motion for summary judgment.  Defendants' motion to dismiss and alternative motion for summary judgment should be denied.

### POINT V
### THE LACK OF PROBABLE CAUSE COMBINED WITH ACTUAL MALICE ON THE PART OF THE OFFICERS SUPPORTS THE CHARGE OF MALICIOUS PROSECUTION

Plaintiff steadfastly maintains that there was no probable cause or even arguable probable cause herein.  Plaintiff has not had the opportunity to depose any of the Defendants, but upon information and belief, a case for malice may be shown through such depositions, particularly when accompanied by a review of the records and files of the individual officers, and of the training programs and supervisory policies of both the City of Mount Vernon Police Department and the City of Mount Vernon.

"[W]here the arrest is made without a warrant, the government bears the burden of establishing probable cause. See *Wu v. City of New York*, 934 F.Supp. 581, 586 (S.D.N.Y., 1996). In general, probable cause exists 'when the arresting officer has "knowledge or reasonably trustworthy information sufficient to warrant a person of reasonable caution in the belief that an offense has been [or is being] committed by the person to be arrested."' *O'Neill v. Town of Babylon*, 986 F.2d 646, 650 (2d Cir.1993)  . . .

19

Courts reviewing an officer's assertions of probable cause 'must consider those facts available to the officer at the time of arrest and immediately before it.' *Lowth v. Town of Cheektowaga,* 82 F .3d 563, 569 (2d Cir.1996)."(citation omitted.) *Gomez* 2007 WL 521046 at 5.

At this stage of the proceedings, with no discovery conducted other than the mandatory 50-H hearing, a dismissal of the malicious prosecution claim is premature.

### POINT VI
### PLAINTIFF WAS DEPRIVED OF HIS DUE PROCESS RIGHTS

Plaintiff asserts that a reasonable officer at the scene would not have found probable cause under the circumstances, and would have taken the simple step of calling the phone numbers supplied by Plaintiff to verify his alibi - he was at his hair appointment in White Plains during the time of the alleged mugging.  Plaintiff's seizure was unreasonable and the force used was excessive under the totality of the circumstances known to the plainclothes officers.

"[T]he court must balance " 'the nature and quality of the intrusion on the individual's Fourth Amendment interests' against the countervailing governmental interests at stake' to determine whether the force applied was objectively reasonable. *Graham v. Connor*, 490 U.S. 386, 396 (1989). . . . A proper application of this test involves consideration of the facts and circumstances of each particular case, including 'the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether the suspect is actively resisting arrest or attempting to evade arrest by flight.'. . . . Furthermore, the reasonableness of the officers' actions "must be judged from the perspective of a reasonable officer on the scene, rather

than with the 20/20 vision of hindsight." *Graham,* 490 U .S. at 396; see also *Johnson v. Glick,* 481 F.2d 1028, 1033 (2d Cir.1973) ('Not every push or shove, even it if it may later seem unnecessary in the peace of the judge's chambers, violates [ ] constitutional rights.'). This analysis must be conducted even though [the judge] determined that factual questions remain as to whether [plaintiff's] arrest was supported by probable cause. See *Jones v. Parmley,* 465 F.3d 46, 61-63 (2d Cir.2006) (clarifying that all claims of excessive force under § 1983 should be governed by the reasonableness standard set forth in *Graham*, regardless of whether there exists a lawful basis for arrest)." (Citations omitted.) *Gomez v. City of New York*, 2007 WL 5210469, 7 (S.D.N.Y., 2007),

"It was clearly established at the time of [plaintiff's] arrest that the Fourth Amendment right to be free from unreasonable seizure includes the right to be free from arrest without probable cause. *Jaegly v. Couch,* 439 F.3d 149, 151 (2d Cir.2006) . . . In analyzing whether an arresting officer is entitled to qualified immunity in the context of a suit alleging that the arrest was not supported by probable cause, a court must determine whether (1) 'it was objectively reasonable for the officer to believe that probable cause existed,' or (2) 'officers of reasonable competence could disagree on whether the probable cause test was met.'" *Posr v. Court Officer Shield No. 207*, 180 F.3d 409, 416 (2d Cir.1999) . . . This standard has also been referred to as 'arguable probable cause.' " (Citations omitted.) *Gomez v. City of New York*, 2007 WL 5210469, 9 (S.D.N.Y., 2007)

## POINT VII
## THERE ARE QUESTIONS OF MATERIAL FACT
## AS TO PLAINTIFF'S STATE LAW CLAIMS

It is premature to dismiss Plaintiff's state law claims or to grant summary judgment as to those claims. There are clearly questions of fact as to whether these

21

claims are indeed barred by governmental immunity, or whether Plaintiff was an

identifiable person subject to imminent harm.  Directly as a result of the actions and

inaction of the officers of the City of Mount Vernon Police Department, operating as

an agency of the City of Mount Vernon, this teenage boy was subject to detention in a

facility for adult male prisoners for two days.  That circumstance on its face arguably

supports that the Plaintiff was in danger of imminent harm.  At the very least, it is a

question of fact for the jury.  Also in question are whether the force exercised by the

officers was reasonably necessary or excessive, and whether the officers are entitled

to governmental immunity.  The state law claims are not only against the officers who

were on duty at the time of the arrest, but through respondeat superior against the City

of Mount Vernon Police Department and the City of Mount Vernon.

Plaintiff relies on the arguments of *Gomez v. the City of New York* as to the state

law claims, as the case herein is remarkably analogous.

"1. Assault and Battery

"New York law regarding assault and battery generally parallels federal law

regarding excessive force. *Kramer v. City of New York*, No. 04 Civ. 106, 2004 WL

2429811, at 11 (S.D.N.Y. Nov. 1, 2004). A civil assault is defined as 'an intentional

placing of another person in fear of imminent harmful or offensive contact,' while a

battery is 'an intentional wrongful physical contact with another person without

consent.'  . . . Where an arrest is supported by probable cause, an officer will not be

liable under theories of assault and battery for the 'use [of] physical force when and to

the extent she or he reasonably believes [it is] necessary to effect the arrest.'  . . .

However, where 'an arrest is determined to be unlawful, any use of force against a

22

plaintiff may constitute an assault and battery, regardless of whether the force would

be deemed reasonable if applied during a lawful arrest.' *Sulkowska v. City of New*

*York*, 129 F.Supp.2d 274, 294 (S.D.N.Y.2001) (emphasis added) (citing *Johnson v.*

*Suffolk County Police Department*, 245 A.D.2d 340, 341, 665 N.Y.S.2d 440, 440-41

(2d Dep't 1997) (holding that police officer committed battery where he merely

touched plaintiff during unlawful arrest)); . . .

  "Where 'there remain disputed issues of fact that are relevant to a determination

of whether the force used by all three officers was reasonable under the circumstances

[e]ven if the officers' conduct was reasonably necessary to carry out the arrest . . .

under state law unresolved questions about the existence of probable cause preclude

summary judgment on the plaintiff's assault and battery claims. Dismissal is therefore

not appropriate.'"(Citations omitted.) *Gomez v. City of New York*, 2007 WL 5210469,

11-12 (S.D.N.Y., 2007).

  It follows that dismissal or summary judgment for Plaintiff's claims for the

infliction of emotional distress and for negligence by the Defendants would be

similarly inappropriate.

"2. State Law Immunity

"Under New York law, governmental immunity generally attaches 'when official

action involves the exercise of discretion or expert judgment in policy matters, and is not

exclusively ministerial.' *Haddock v. City of New York*, 75 N.Y.2d 478, 484, 554 N.Y.S.2d

439, 443 (1990). This doctrine is grounded in the view that government officers and

employees should be free to exercise judgment in carrying out their official duties

'unhampered by fear of second guessing and retaliatory lawsuits.' Id. While it is true that

23

in effecting an arrest, a police officer must exercise some discretion, the routine duties of police officers are not subject to the same level of immunity afforded to high-level decisionmakers. See *Jones v. State*, 33 N.Y.2d 275, 279, 352 N.Y.S.2d 169, 172 (1973) ('A long line of cases has held the State or municipalities liable for the actions of their police officers in the line of duty.'). New York has treated the actions of police officers similar to the way they are treated under federal law: immunity will shield the officers and their employer from liability as long as the conduct was reasonable. See *Jones v. Parmley*, 465 F.3d at 63 (holding that defendant officers were entitled under New York law to 'qualified immunity on state-law claims except where [their] actions are undertaken in bad faith or without a reasonable basis'); cf. *Arteaga v. State of New York*, 72 N.Y.2d 212, 217 n. 1, 219-20, 532 N.Y.S.2d 57, 60 n. 1, 61 (1988) (distinguishing corrections officials from police officers 'who under established law are entitled only to qualified immunity'); *Arias v. City of New York*, 22 A.D.3d 436, 437, 802 N.Y.S.2d 209, 211 (2d Dep't 2005) ('[I]mmunity extends to the actions of police officers engaged in law enforcement activities provided that the officers' actions are not inconsistent with acceptable police practice.') (citations omitted).

"As discussed above, there remain disputed issues of fact relevant to a determination of whether the officers' had probable cause to arrest the plaintiff and whether the manner in which they effected the arrest was reasonable. The Court is in no greater position to make a determination on the reasonableness of the defendants' conduct for purposes of the state claims than on the federal claims. Accordingly, the defendants are not entitled to summary judgment on state law immunity grounds for the false imprisonment, assault, and battery claims. See, e.g., *Hayes v. City of*

24

*Amsterdam*, 2 A.D.3d 1139, 1141, 770 N.Y.S.2d 138, 140-41 (3d Dep't 2003) (declining to grant summary judgment on plaintiff's claim against municipality in light of factual dispute about reasonableness of officers' use of force)." *Gomez v. City of New York*, 2007 WL 5210469, 11-12 (S.D.N.Y., 2007).

## CONCLUSION

Based on the foregoing, Plaintiff's causes of action should be sustained, and the motion of Defendants for dismissal, or, in the alternative, for summary judgment, should be denied.

Dated:  July 11, 2008
          White Plains, New York

Respectfully submitted,

_____
Cheryl K. Beece, Esq.
**PARISI &PATTI, LLP**
200 Mamaroneck Ave. Suite 602
White Plains, New York 10601
(914) 287-0201
(914) 287-7384 (Fax)

25

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------------------------------------------

JOSE GARCIA,

                                                           **08-CIV-1270**

                                   Plaintiff,

                   -against-                             **(SCR)**

CITY OF MOUNT VERNON,
CITY OF MOUNT VERNON POLICE DEPARTMENT, and
INDIVIDUALS OF THE CITY OF MOUNT VERNON
POLICE DEPARTMENT,

                                    Defendants.
-------------------------------------------------------------------------------------------------------


**MEMORANDUM OF LAW IN OPPOSITION TO MOTION FOR DISMISSAL
BASED ON THE PLEADINGS OR ALTERNATELY SUMMARY JUDGMENT**

-------------------------------------------------------------------------------------------------------
PARISI AND PATTI, LLP
Attorney for Plaintiff
200 Mamaroneck Avenue, Suite 602
White Plains, NY 10601
(914) 287-7374
Fax: (914) 287-7384
-------------------------------------------------------------------------------------------------------


To:                   Nichelle Johnson, Esq.
                     Assistant Corporation Counsel
          City of Mount Vernon Department of Law
                  Attorneys for Defendants
                    One Roosevelt Square
                  Mount Vernon, NY  10550
-------------------------------------------------------------------------------------------------------


Dated:  July 11, 2008
-------------------------------------------------------------------------------------------------------


      The undersigned attorney certifies pursuant to 22 NYCRR 1301.1 that to the best of his/her knowledge, information and belief, the annexed document is not frivolous.


                            _____
                               Cheryl K. Beece, Esq.