UNITED STATE DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------X
JOSE GARCIA,

                                              Plaintiff(s),

      -against-

CITY OF MOUNT VERNON, CITY OF MOUNT VERNON
POLICE DEPARTMENT, and INDIVIDUALS OF THE CITY OF
MOUNT VERNON POLICE DEPARTMENT,

                      Defendant(s).
-----------------------------------------------------------------------X

08-CIV-1270

(SCR)

## REPLY MEMORANDUM OF LAW

# TABLE OF CONTENTS

TABLE OF AUTHORTIES  ……………………………………………………  i-iii

PRELIMINARY STATEMENT    …………………………………………………  1

I.    BASED UPON THE TOTALITY OF THE CIRUCMSTANCES
     THE OFFICER'S ACTIONS WERE REASONABLE…………………..    2

     A.  A comparison of the Gomez case establishes the legality of the officer's
         actions................................................................... …………….  2

     B.  The Show-Up procedure was not unduly suggestive and provided probable
         cause ............................................................... …………….  4

     C.  Plaintiff's injuries are de minimis by the law …………………………    6

II.   THE OFFICERS ARE ENTITLED TO QUALIFIED IMMUNITY …….    7

III.  PLAINTIFF'S SUBSTANTIVE DUE PROCESS RIGHTS WERE NOT
      VIOLATED ..................................................................... …………….. 9

IV.   PLAINTIFF'S EQUAL PROTECTION RIGHTS WERE NOT VIOLATED
      ................................................................................... ………    10

V.    CONCLUSION............................................................ …………..  10

# TABLE OF AUTHORITIES

*Graham v. Connor* ........................................................................... 7
490 U.S. 386, 109 S. Ct. 1865 (1965)

## 2ND CIRCUIT

*Boddie v. Schnieder,* ........................................................................ 7
105 F.3d 857, 861 (2d Cir.1997)

*Cerrone v. Brown,* ........................................................................... 8
246 F.3d 194, 202-03 (2d Cir.2001)

*Golino v. City of New Haven,* ......................................................... 8
950 F.2d 864, 870 (2d Cir.1991)

*Maxwell v. City of New York* ........................................................... 6
380 F.3d 106, 108-09(2d Cir. 2004)

*McCllellan v. Smith* ........................................................................ 8
439 F.3d at 147-48(2d Cir.2006)

*Natale v. Town of Ridgefield,* ......................................................... 9
170 F.3d 258, 263 (2d Cir.1999)

*Posr v. Court Officer Shield No. 207,* ........................................... 8
180 F.3d at 416(2d Cir.1999)

*Robison v. Via* ............................................................................... 6, 8
821 F.2d 913, 924-25 (2d Cir. 1987)

*United States v. Alexander,* ............................................................ 3
907 F.2d at 272, (2d Cir.)

*United States v. Baldwin* ............................................................... 4
496 F.3d 215, 219-20(2d Cir.2007)

*United States v. Esieke,* ................................................................. 3
940 F.2d 29, 36 (2d Cir.1991)

*United States v. Harley,* ................................................................. 3
682 F.2d 398, 401 (2d Cir.1982)

## 4th CIRCUIT

*Taylor v. McDuffie,* ......................................................................... 7
155 F.3d 479, 483 (4th Cir.1998)

## 11th CIRCUIT

*Jackson v. Sauls*, ......................................................................................... 8
206 F.3d 1156, 1166 (11th Cir.2000)

*Bove v. City of New York*, ........................................................................... 7
1999 U.S. Dist. LEXIS 12112, at *20-21 (S.D.N.Y.1999)

*Bove v. New York City*, ................................................................................ 7
No. 98 Civ. 8800, 1999(S.D.N.Y. Aug. 6, 1999)

*Cunningham v. Rodriguez*, ......................................................................... 7
2002 U.S. Dist. LEXIS 22660, at *12-13 (S.D.N.Y. Nov 22, 2002)

*Espinal v. Goord*, ........................................................................................ 7
No. 00 Civ. 2242(AJP), (S.D.N.Y. May 7, 2001)

*Gomez v. City of New York* ......................................................................... 2, 3, 4
*2007 WL 5210469*(SDNY 2007).

*Rincon v. City of New York*, ........................................................................ 7
No. 03 Civ. 8726, 2005 WL 646080, at *4-5 (SDNY Mar. 21, 2005).

*Jacobson v. Town of North Haven*, ............................................................. 8
No. 04-CV-1084 (WWE), 2006 U.S. Dist. LEXIS 73372, at *17
(D.Conn. Aug. 18, 2006)

*Sutton v. Duguid*......................................................................................... *4*
2007 WL 1456222 (E.D.N.Y.2007)

*Wilder v. Vill. Amityville*, ........................................................................... 7
288 F.Supp.2d 341, 344 (E.D.N.Y.2003)

*United States v. Laing*, ............................................................................... 3
*889 F.2d 281, 285 (D.C.Cir.1989)*

## 2nd DEPARTMENT

*People v. Burton*, ........................................................................................ 6
194 A.D.2d 683, 599 N.Y.S.2d 108 (2nd Dept.1993.)

*People v. Carehart*, .................................................................................... 5
151 A.D.2d 592, 592-593, 543 N.Y.S.2d 921 (2nd Dept.1989)

*People v. Dennis*, ........................................................................................ 5
125 A.D.2d 325, 326, 509 N.Y.S.2d 58 (2nd Dept.1986.)

*People v. Grassia,* ........................................................................................... 5
195 A.D.2d 607, 601 N.Y.S.2d 124 (2nd Dept.1993)

*People v. Griffin,* ............................................................................................ 6
2005 Slip Op 01217 (2nd Dept.2005)

*People v. Martinez,* ........................................................................................ 5
301 A.D.2d 615, 753 N.Y.S.2d 851 (2nd Dept.2003.)

*People v. Morgan,* .......................................................................................... 4
309 A.D.2d 768, 765 N.Y.S.2d 261 (2nd Dept.2003.)

*People v. Pierre,* ............................................................................................ 5
2 AD3d 461, 767 N.Y.S.2d 822 (2nd Dept.2003)

*People v. Soto,* ............................................................................................... 6
279 A.D.2d 592, 719 N.Y.S.2d 603 (2nd Dept.2001)

*People v. Whitney,* ......................................................................................... 5
158 A.D.2d 734, 552 N.Y.S.2d 178 (2nd Dept.1992)

*People v. Cantor,* ........................................................................................... 4
36 N.Y.2d 106, 112-113 (1975.)

*People v. Hicks,* ............................................................................................. 4
68 N.Y.2d 234 (1986)

*People v. Martinez,* ........................................................................................ 4
80 N.Y.2d 444, 448 (1992)

### 3RD DEPARTMENT

*People v. Martinez,* ........................................................................................ 5
9 AD3d 679, 681, 779 N.Y.S.2d 821 (3rd Dept.2004.)

## PRELIMINARY STATEMENT

There are no material factual issues in dispute. We agree that on February 23, 2007, a Friday evening, a Chinese delivery man was the alleged victim of an attempted robbery. The Police department was called (See Plaintiff's 50-H Testimony Attached hereto as Exh. A pg 26 lns 17-25) and responded because they had an obligation to respond and investigate. The description of the alleged attackers and the area where the attacked occurred, was broadcast over the police radio (See Exh A pg 26 lns 17-25). Two plainclothes officers in the area of where the alleged mugging took place spotted the Plaintiff and opined that he fit the description of one of the attackers. This we know was based in part on the clothing the Plaintiff was wearing (Compl. At par. 23 & Exh A pg 31 lns 5-13). The plainclothes officers in an unmarked car after driving by the Plaintiff once, then again, jump out of the car and ran toward Plaintiff (See Compl. at par 6&7), who maintains that if they said anything he would not know because he had an ipod on (See Compl. at par 5 & Exh A pg 17 lns 17-20). Plaintiff ran from the two men not knowing they were police (Compl. At par 8 & Exh A pg 18 lns 2-3).

*At this point the Plaintiff has done nothing wrong by fleeing but neither have the officers by pursuing the fleeing Plaintiff, everyone here is innocent including the officers who are doing their job in good faith.* The officers catch the Plaintiff and he is physically thrown to the ground injuring his wrist and hit on the head while on the ground by one of the officers. Plaintiff believes the officer who hit his head was probably the officer that was trying to get his arms (See Exh A at pg 49 lns 19-23). Plaintiff was then placed in handcuffs and stood up and the victim confirmed that the Plaintiff was one of his attackers from another police car across the street while in the back seat (Compl. At par. 22 & Exh A pg 25 lns 3-13). Plaintiff was then arrested for attempted robbery (Compl. At par. 24 & 32). We submit that taking the facts as described by the Plaintiff, that there has been no constitutional violation of the Plaintiff's rights. The facts as given by the Plaintiff in his Complaint and during his testimony establish that the officers had reasonable suspicion to attempt to question the

Plaintiff, to pursue him after he fled, to detain him using reasonable force and secure control of the Plaintiff using handcuffs for a prompt show-up identification and probable cause to arrest the Plaintiff. Further, even if this Court were to find that they violated the Plaintiff's constitutional rights this case and the facts herein cry out for qualified immunity because the officer's actions were objectively reasonable given the Plaintiff's own allegations. Further, based on the foregoing, the fact that the officers did not violate Plaintiff's constitutional rights, the Plaintiff has no cause of action against the City of Mount Vernon. We submit that this Honorable Court should dismiss the complaint on the pleadings or alternatively grant summary judgment and qualified immunity to the officers.

**I.    BASED UPON THE TOTALITY OF THE CIRUCMSTANCES THE OFFICER'S ACTIONS WERE REASONABLE**

### A.  A comparison of the Gomez case establishes the legality of the officer's actions

We submit that the officers had reasonable suspicion to question the Plaintiff, to pursue him after he fled, to detain him for a prompt show-up identification by using reasonable force and handcuffs to control and prevent further flight and the positive show-up identification provided yet another factor giving the officers probable cause to arrest the Plaintiff. Plaintiff relies on the Gomez case to argue that the steps taken by the officers in the instant case violated his constitutional rights but a review of the *Gomez* case actually supports the fact that the officers in this matter acted reasonably, consistent with the law and did not violate the Plaintiff's constitutional rights and at the very least are entitled to qualified immunity.

The Gomez case can be easily distinguished from the case at bar. First and foremost, there is no quivering over the material facts in this case. Indeed no officers has been deposed and none need to be deposed based upon the pleadings and the Plaintiff's own testimony which when taken in the most favorable light to the Plaintiff establish that the officers herein had probable cause to arrest the Plaintiff or at the very least arguable probable cause to arrest the Plaintiff and that their overall actions were reasonable and did not violate the Plaintiff's constitutional rights.

Second, while the officers in this case were plainclothes like those in *Gomez* according to the Plaintiff as stated in the Complaint and in his 50-H testimony, he ran from them when he saw them. Unlike in Gomez where there was different accounts from the Plaintiff and the officers about whether he backed away, here the Plaintiff, and we do not quiver with this fact, began to run as he said, out of fear because he did not know the officers in the instant case were officers. We give that to the Plaintiff and simply rely on the ***undisputed fact that he ran*** and submit that the issue is what was the effect of the Plaintiff's flight in the minds of those reasonable officers and how they were perceiving the incident at that time. The Defendants offer that this self admitted attempt to get away from the police officers herein was an element of the totality of the circumstances that faced the officers that day and upon which they have, by law, the right to consider in their overall assessment of the situation that faced them that day (See *United States v. Harley*, 682 F.2d 398, 401 (2d Cir.1982)(considering defendant's flight from police as a proper factor in reasonable suspicion analysis and where the Second Circuit explained "[f]rom the very infancy of criminal litigation, juries have been permitted to consider flight as 'evidence of consciousness of guilt and thus of guilt itself.' Such evidence surely may be considered by police officers contemplating only a stop or an arrest ... "). Further, the handcuffing of the Plaintiff has long been recognized as a tool which officers can use in an investigatory stop to prevent flight or for their safety. The amount of force used to carry out the stop and search must be reasonable, but may include using handcuffs or forcing the detainee to lie down to prevent flight" *United States v. Laing*, 889 F.2d 281, 285 (D.C.Cir.1989). Indeed, this doctrine has supported a range of restraints incident to a stop, from the pat-down at issue in *Terry*, to the drawing of firearms, *see United States v. Alexander*, 907 F.2d at 272 to the use of handcuffs, *see United States v. Esieke*, 940 F.2d 29, 36 (2d Cir.1991) (holding that use of handcuffs and leg irons to restrain suspected alimentary canal smuggler did not convert his border detention into an arrest). Further, we submit that this couple with the officer's opinion that Plaintiff matched the description of what was given over the radio, by law,

3

gave the officers the right to give chase to question the Plaintiff. Indeed in the _Gomez_ case, it stated that a suspects retreat from officers attempting to question him may itself transform reasonable suspicion into probable cause to arrest and it cited the _United States v. Baldwin_ case at 496 F.3d 215, 219-20(2d Cir.2007) where the court held an unprovoked flight in response to even an unreasonable order to stop may give rise to probable cause.

Third, Plaintiff seems to rely on _Gomez_ also arguing that the Plaintiff here just like in _Gomez_ did not know the men that approached that day were police officers, however the reason why this fact was so critical in _Gomez_ in terms of the false arrest charge, was because Gomez was arrested for resisting arrest and any facts that had bearing on that issue that were in dispute bore on the actual charge Gomez was facing. Here that is not the case. Here the Plaintiff was not arrested for resisting arrest he was arrested for attempted robbery as, in addition to the fact that he fit the description of one of the attackers then fled from the officers, he was identified by the putative victim as one of his attackers and was apprehended in the area where the mugging occurred. No such facts lie in _Gomez_ so it is a different case. Similarly, in the _Sutton_ case cited by Plaintiff the court held that the officers did not have probable cause to arrest because the underlying charges namely, resisting arrest, assault and harassment as the Plaintiff there resisted arrest by the officers and fought back, such is not the case here as the Plaintiff here was arrested for attempted robbery not anything associated with his flight.

**B. The Show -Up procedure was not unduly suggestive and provided probable cause**

The police are authorized to temporarily detain a subject for the purposes of conducting a show up identification, provided the police have "reasonable suspicion" to believe the subject is the perpetrator. _People v. Hicks, 68 N.Y.2d 234 (1986)_ and _People v. Morgan, 309 A.D.2d 768, 765 N.Y.S.2d 261 (2nd Dept.2003.)_ "Reasonable suspicion represents that 'quantum of knowledge sufficient to induce an ordinarily prudent and cautious person under the circumstances to believe criminal activity is at hand' " _People v. Martinez, 80 N.Y.2d 444, 448 (1992)_ quoting _People v. Cantor, 36 N.Y.2d 106, 112-113_

4

(1975.) Also, reasonable suspicion to detain a subject for the purposes of a show up identification may be based on police radio transmissions. *People v. Martinez*, 301 A.D.2d 615, 753 N.Y.S.2d 851 (2nd Dept.2003.) Here, the information provided to Officers over the radio which were the details of the crime, with a description of the suspects and the area where the alleged crime took place, provided the Officers herein "reasonable suspicion" to believe the Plaintiff was one of the perpetrators of the crime alleged.

In this matter the police brought the Chinese victim to the area where the Plaintiff was finally apprehended for a show-up identification of the Plaintiff. Case law makes clear that, although often "inherently suggestive" show up identifications have been upheld, provided they occur within close geographic and temporal proximity to the crime, unless they are "unduly" suggestive. *People v. Martinez*, 9 AD3d 679, 681, 779 N.Y.S.2d 821 (3rd Dept.2004.) We know from the Plaintiff's own testimony that the alleged mugging occurred in his neighborhood and the area where he was apprehended that night (See Plaintiff's 50-H testimony at page 26 lines 17-25 page 27 line 2). Further, in a plethora of cases courts have held that being in handcuffs and even standing by police officers does not make the show-up identification unduly suggestive. In *People v. Pierre*, 2 AD3d 461, 767 N.Y.S.2d 822 (2nd Dept.2003), it was held that "contrary to the defendant's contention, his show up identification was not unduly suggestive because he was handcuffed and in the presence of uniformed police officers during the show up procedure" *Pierre, supra* at 462, citing *People v. Grassia*, 195 A.D.2d 607, 601 N.Y.S.2d 124 (2nd Dept.1993); *People v. Whitney*, 158 A.D.2d 734, 552 N.Y.S.2d 178 (2nd Dept.1992); *People v. Carehart*, 151 A.D.2d 592, 592-593, 543 N.Y.S.2d 921 (2nd Dept.1989); and *People v. Dennis*, 125 A.D.2d 325, 326, 509 N.Y.S.2d 58 (2nd Dept.1986.) Based upon this case law Plaintiff can not argue that the show-up identification was unduly suggestive. The show-up identification by the Chinese delivery man was good and thus provided probable cause for the Officers to arrest the Plaintiff for Attempted Robbery. Further, case law provides "information provided by an identified

citizen accusing another individual of a specific crime is legally sufficient to provide the police with probable cause to arrest." *People v. Griffin*, 2005 Slip Op 01217 (2nd Dept.2005) citing *People v. Soto, 279 A.D.2d 592, 719 N.Y.S.2d 603 (2nd Dept.2001)* and *People v. Burton, 194 A.D.2d 683, 599 N.Y.S.2d 108 (2nd Dept.1993.)* Thus, the Plaintiff's causes of action for false arrest, false imprisonment, assault and battery should be dismissed. Alternatively, if this Court were to be persuaded that such action was unduly suggestive so that the officers should not have relied on it to arrest Plaintiff, because the officers were not aware that their actions of arresting the Plaintiff as a result of what is deemed  a suggestive show-up identification, we submit that they are entitled to qualified immunity because they had arguable probable cause and reasonable officers could disagree as to whether they had probable cause in this instance and their reasonable mistake of the law should be excused.

### C. Plaintiff's injuries are de minimis by the law

As to the excessive force claim, in Gomez, the Court found that while the Plaintiffs injuries may not have been severe, that they were not superficial to warrant a dismissal as a matter of law. The Court relied on the fact that there were medical records from Bellevue Hospital that indicated that the Plaintiff suffered multiple abrasions and bruises on his face, shoulder, elbows, wrist and knee that lasted approximately one week. The Court felt that Gomez's injuries were similar to those suffered by the Plaintiff's in Maxwell 380 F.3d 106, 108-09(2d Cir. 2004), and Robison 821 F.2d 913, 924-25 (2d Cir. 1987). In Robison the Plaintiff therein suffered bruises lasting a couple of weeks and in Maxwell the Plaintiff suffered shoulder pain and a scrape to her forehead. Significantly, in Maxwell the Plaintiff therein went to the hospital and was indeed diagnosed with ***post-conclusive syndrome*** as the Plaintiff was thrown head first into a police car where she hit her head. Such types of injuries are not the case herein. Here the Plaintiff suffered a scraped wrist that had healed by the time he was released from Valhalla jail 3 days later (See Exhibit A page 48 lines 4-9). We submit to this Honorable court that this case, specifically the inquiry into the excessive force component, be analyzed with cases in this jurisdiction where it has been held that such injuries are de minimis. In this regard, we submit that the

injuries are more akin to the injuries and fact pattern in *Rincon v. City of New York*, No. 03 Civ. 8726, 2005 WL 646080, at *4-5 (SDNY Mar. 21, 2005). In *Rincon* the court held that although the Plaintiff sought medical attention there even Plaintiff alleges that she was treated only for swelling in her right leg and wrist and aside from the swelling in her wrist, Plaintiff does not allege that Defendants caused any other injuries. Plaintiff's allegations are *de minimus* and simply do not amount to a constitutional violation. *See Wilder v. Vill. Amityville*, 288 F.Supp.2d 341, 344 (E.D.N.Y.2003) (dismissing excessive force claim based on allegations of tight handcuffs), *Cunningham v. Rodriguez*, 2002 U.S. Dist. LEXIS 22660, at *12-13 (S.D.N.Y. Nov 22, 2002) (blows to back and face were *de minimus* ), *Bove v. City of New York*, 1999 U.S. Dist. LEXIS 12112, at *20-21 (S.D.N.Y.1999) (summary judgment granted on excessive force claim where hospital record showed that force used was *de minimus* )See also *Boddie v. Schnieder*, 105 F.3d 857, 861 (2d Cir.1997) (bumping, grabbing, elbowing, and pushing plaintiff was *de minimis* ); *Espinal v. Goord*, No. 00 Civ. 2242(AJP), (S.D.N.Y. May 7, 2001) (injuries held to be *de minimis* where plaintiff was hit in the face two or three times, requiring summary judgment); *Bove v. New York City*, No. 98 Civ. 8800, 1999(S.D.N.Y. Aug. 6, 1999) (summary judgment where only injury supported by evidence was single bruise to head); *Taylor v. McDuffie*, 155 F.3d 479, 483 (4th Cir.1998) (pretrial detainee's injuries held *de minimis* where medical records do not support plaintiff's purported injuries), *cert. denied*, 525 U.S. 1181, 119 S.Ct. 1121, 143 L.Ed.2d 115 (1999).

For the foregoing reasons Plaintiff's excessive force claim should be dismissed or alternatively the Defendants should be qualified immunity and summary judgment as the officer's actions were objectively reasonable in light of *Graham*.

## II.    THE OFFICERS ARE ENTITLED TO QUALIFIED IMMUNITY

When analyzing qualified immunity in the context of a suit for damages based on an arrest allegedly without probable cause, a police officer is immune from such suit " 'if either (a) it was objectively reasonable for the officer to believe that probable cause existed, or (b) officers of reasonable

competence could disagree on whether the probable cause test was met.' " *Post,* 180 F.3d at 416

(quoting *Golino v. City of New Haven,* 950 F.2d 864, 870 (2d Cir.1991)). The Second Circuit has defined

this standard, which is often referred to as "arguable probable cause," as follows:

> Arguable probable cause exists when a reasonable police officer in the same circumstances and
> possessing the same knowledge as the officer in question could have reasonably believed that
> probable cause existed in the light of well established law. It is inevitable that law enforcement
> officials will in some cases reasonably but mistakenly conclude that probable cause is present, and we
> have indicated that in such cases those officials-like other officials who act in ways they reasonably
> believe to be lawful-should not be held personally liable. *Cerrone v. Brown,* 246 F.3d 194, 202-03 (2d
> Cir.2001) (internal quotations and citations omitted). Moreover, under that standard, "an 'arresting
> officer is entitled to qualified immunity as a matter of law if the *undisputed facts* and all permissible
> inferences favorable to the plaintiff show ... that officers of reasonable competence could disagree on
> whether the probable cause test was met.' " *McClellan,* 439 F.3d at 147-48 (quoting *Robison v. Via,*
> 821 F.2d 913, 921 (2d Cir.1987)). This same analysis applies to an investigatory stop based on
> reasonable suspicion. That is, to determine whether an officer is entitled to qualified immunity on an
> investigatory stop, the Court must examine whether (a) it was objectively reasonable for the officers
> to believe reasonable suspicion existed or (b) officers of reasonable competence could disagree on
> whether the reasonable suspicion test was met. *Jackson v. Sauls,* 206 F.3d 1156, 1166 (11th Cir.2000)
> ("When an officer asserts qualified immunity, the issue is not whether reasonable suspicion existed in
> fact, but whether the officer had 'arguable' reasonable suspicion to support an investigatory stop.");
> *see also Jacobson v. Town of North Haven,* No. 04-CV-1084 (WWE), 2006 U.S. Dist. LEXIS 73372, at *17
> (D.Conn. Aug. 18, 2006) (granting summary judgment on the basis of qualified immunity where
> there was "arguable reasonable suspicion" that some criminal activity was occurring).

The Sutton ,Hamlett and Post cases are easily distinguishable from the instant case. In all these

8

cases the Plaintiffs were charged with either resisting arrest or disorderly conduct as a result of their reaction to the persons they did not know were police. The Plaintiffs argued, and the court agreed that this material issue precluded summary judgment. Such is not the case here. The Plaintiff was not arrested as a result of his flight from the police. The Plaintiff herein was arrested for attempted robbery. Now if the officers were mistaken in the arrest of the Plaintiff as a result of being misguided by the identification of the Plaintiff by the putative victim, the officers are entitled to qualified immunity. We submit taking the facts as alleged by the Plaintiff, this Court could find based upon the totality of the circumstances that the officers had at least arguable reasonable suspicion based upon 1) the Plaintiff fitting the description of one of the attackers, 2) being in the immediate area of the mugging and 3) his flight when they approached; that the officers were reasonable in their use of force in apprehending the Plaintiff by throwing him to the ground after he fled and the fact that the resulting injury is de minimis by law further enhances the reasonableness of their force and the lack of a constitutional violation. Further, that the officers had arguable probable cause to arrest the Plaintiff as a result of the identification of the Plaintiff by the Chinese putative victim.

On the evidence offered herein we submit the officers are entitled to qualified immunity in that they reasonably and objectively believed that they had reasonable suspicion to stop and detain the Plaintiff and that they were reasonable in their use of force as a result of his flight that they reasonably and objectively believed that probable cause did exist and that their arrest of plaintiff was lawful and constitutionally sound. If this Court should find that the officers made a mistake with regard to their assessment of reasonable suspicion and probable cause we submit that these mistakes were reasonable and did not rise to the level of plain incompetence.

### III. PLAINTIFF'S SUBSTANTIVE DUE PROCESS RIGHTS WERE NOT VIOLATED

"Substantive due process standards are violated only by conduct that is so outrageously arbitrary as to constitute a gross abuse of governmental authority." *Natale v. Town of Ridgefield*, 170 F.3d 258,

263 (2d Cir.1999). Plaintiffs complain that, the Plaintiff was deprived of his right to be with his family and for this reason his substantive due process rights were violated. We submit, in light of the information available to the police officers that evening as discussed above that neither the detention of the Plaintiff on February 23, nor any follow-up investigation of the Plaintiff gives rise to an inference of outrageous arbitrary abuse of governmental authority. In the alternative, we respectfully submit that the Court find that it was objectively reasonable for the officers herein to believe that their actions did not violate the Plaintiff's substantive due process rights, and that the officers are entitled to qualified immunity on any alleged violation of substantive due process.

## IV.    PLAINTIFF'S EQUAL PROTECTION RIGHTS WERE NOT VIOLATED

Plaintiff can not make a case out for an equal protection violation as Plaintiff has failed to allege and proffer any proof that he was treated any differently than others similarly situated. Plaintiff asserts that the decisions made by the Defendants in their treatment of Plaintiff throughout were all racially motivated is not enough to plead a case of a violation of equal protection. What decisions? The decision to arrest was based upon the fact that Plaintiff fit the description, was in the area where the crime occurred and moreover, was identified by the putative victim. Thus, Plaintiff has not plead with sufficiency a claim for a violation of his equal protection rights and can not proffer any such evidence that his race was the sole factor on all the decisions that were made by the Defendants herein. For the foregoing reasons Plaintiff's equal protection cause of action must be dismissed or Defendants are entitled to summary judgment in this regard.

## V. CONCLUSION

For the foregoing reasons we respectfully request that he Plaintiff's complaint be dismissed pursuant to Fed. R. Civ. P. 12(c) for failure to state a cause of action as the Plaintiff's constitutional rights were not violated and/or pursuant to (56)(b) for summary judgment and granting qualified immunity to all unnamed officers herein.

10

Dated: Mount Vernon, New York
  July 17, 2008

       Respectfully submitted
       Helen M. Blackwood
       Corporation Counsel

       By_____
       NICHELLE A.  JOHNSON (NAJ7688)

11



EXHIBIT "A"



```
- - - - - - - - - - - - - - - - - - - - - X
In the Matter of the Claim of:

JOSE GARCIA,

             Claimant,

        -against-

THE CITY OF MOUNT VERNON, THE CITY OF MOUNT
VERNON POLICE DEPARTMENT, INDIVIDUALS OF THE
CITY OF MOUNT VERNON POLICE DEPARTMENT,

             Respondents.
- - - - - - - - - - - - - - - - - - - - - X


HELD AT:      City of Mount Vernon
              Law Department
              City Hall
              One Roosevelt Square
              Mount Vernon, New York  10550
              November 14, 2007
              2:50 p.m.
```

Deposition of the Claimant,

JOSE GARCIA, held pursuant to Section 50-h

of the General Municipal Law of the State of

New York, held at the above time and place

before a Notary Public of the State of New

York.

J & L REPORTING SERVICE
of Westchester, Inc.
200 East Post Road
White Plains, New York 10601
(914) 682-1888
Jacqueline A. Smith, Reporter

1                          J. GARCIA                    17

2              Q.    Initially, I believe you

3        indicated that you just kept walking?

4              A.    Yes.

5              Q.    Then the two individuals exited

6        the vehicle?

7              A.    Yes.

8              Q.    And then what happened?

9              A.    They started to the run towards

10       me.

11             Q.    How far away from them were you

12       at that point?

13             A.    Not far.  They pulled right up

14       beside side me.  They got out of the car and

15       immediately started to run toward me.  So, I

16       began to run.

17             Q.    Did they say anything to you?

18             A.    I am not sure.  I had an iPod.

19       I was listening to the iPod while I was

20       walking home.

21             Q.    What kind of iPod did you have?

22             A.    A blue iPod nano.

23             Q.    Okay.  Are you saying that the

24       two individuals began to run at you?

25             A.    Yes.  Towards me.

1                          J. GARCIA              18

2              Q.    And you began running?

3              A.    Yes.

4              Q.    What happened next?

5              A.    I was running and I slipped on

6     a piece of ice.  So, I lost my balance.  By

7     the time I was getting up, they caught up to

8     me.  And I was thrown to the floor in the

9     middle of the street, from the sidewalk to

10    the street.  I was hit in the back of the

11    head.  I am not sure if I was punched but I

12    was face down on the floor.  Then they put

13    handcuffs on me.

14             Q.    At the time that you were

15    thrown to the floor, did you still have your

16    iPod nano in your ears?

17             A.    No.  They fell out and got

18    damaged.

19             Q.    What if anything did these

20    individuals say to you at that time as you

21    were being thrown to the floor?

22             A.    They weren't saying anything.

23    They were putting handcuffs on me.  They

24    stood me up and one of the officers I guess

25    radioed to another cop.  That's when I

J. GARCIA                    26

of the black tinted window car?

      A.    Yes.

      Q.    Did you see the Chinese man
inside the third police car?

      A.    No.

      Q.    That third police car, I think
you indicated was probably a marked cop car
according to your definition.

      A.    Yes.

      Q.    How then are you coming to the
conclusion that you assume that it was the
Chinese guy in the back who was telling them
that you committed the crime?  How did you
know there was a Chinese guy back there?
When did you find that out?

      A.    When I was taken in, after that
happened, the two undercover cops took me to
the car that they were in.  I sat in the
back seat.  The black officer sat with me in
the back seat.  The other officer was
driving.  He was telling me what was going
on.  That they were called and I matched the
description of what was given by a Chinese
man who was delivering food in my area was

J. GARCIA                    31

2    officers that first came up to you and had

3    you in the police car going to the station?

4          A.    Yes.

5          Q.    What if anything did they say

6    to you with regard to what you were saying

7    to them?

8          A.    The black officer was sitting

9    in the back seat with me.  He told me that

10   they got a call in.  Somebody gave a

11   description and I basically matched the

12   description of what I had on.  I think it

13   was the scar face leather jacket.

14         Q.    What if anything else did he

15   say?

16         A.    No.  Not really.

17         Q.    Did both those officers walk

18   you into the station or just one, if you

19   recall?

20         A.    They both did.  They pulled up

21   behind the station where they park the car.

22   And I went through there and a holding cell

23   with the bench was right there.

24         Q.    What if anything did they say

25   to you as you were being walked in there?

1                          J. GARCIA                    49

2              Q.    Did you struggle with them,

3        like fight with them at all?

4              A.    No.   They were big men.   There

5        was not much of a fight.   They tossed me on

6        the floor.   Slammed me to the street.

7              Q.    Okay.   Did they both slam you

8        to the floor or was it one particular

9        officer?

10             A.    One.   But both were on top of

11       me while I was on the floor.

12             Q.    Which officer slammed you to

13       the floor?

14             A.    I am not sure.   While I was on

15       the floor, I felt two bodies on me.

16             Q.    If you were not struggling,

17       what were they doing?   Were they grabbing

18       your arms together?

19             A.    Basically, I felt like he was

20       laying on top of me.   I guess so I wouldn't

21       move.   And the other one was getting my

22       arms.   He was probably the one that hit me

23       in the back of my head.

24             Q.    But as you sit here today, I

25       believe you indicated you don't know how he